UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— x
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
              v.                              :   No. 10 CR. 336 (LAK)
                                              :   ECF Case
CHAD ELIE and JOHN CAMPOS,                     :
                                              :
                          Defendants.         :
—————————————————————————— x


## DEFENDANTS' MOTION IN LIMINE REGARDING THE RELEVANCE OF SKILL AND REQUISITE *MENS REA*


KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Barry H. Berke
Dani R. James
Jennifer L. Rochon
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100


BANCROFT PLLC
Paul D. Clement
1919 "M" Street, N.W., Suite 470
Washington, DC 20036
(202) 234-0090


*Attorneys for Defendant Chad Elie*


HAFETZ NECHELES & ROCCO
Frederick P. Hafetz
Kathleen E. Cassidy
500 Fifth Avenue, 29th Floor
New York, New York 10110
(212) 997-7595


CLYDE SNOW & SESSIONS
Neil A. Kaplan
Anneli R. Smith
201 South Main Street, Suite: 1300
Salt Lake City, UT 84111
(801) 322-2516


*Attorneys for Defendant John Campos*

## TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................... ii

Introduction ................................................................................................................. 1

Argument .................................................................................................................... 3

I.   Defendants Should Be Permitted to Introduce Evidence Showing that the Peer-
     to-Peer Online Poker Activities Alleged Here Do Not Fall Under UIGEA or
     IGBA .................................................................................................................. 3

     A.   Under UIGEA, the Jury Must Determine Whether Chance Predominates
         Over Skill in Determining Outcomes in Order to Find That Peer-to-Peer
         Online Poker is a "Game Subject to Chance" ............................................. 6

     B.   The Jury Must Determine Whether Online Peer-to-Peer Poker is
         "Gambling" Under IGBA ............................................................................ 11

         1.   Whether Poker is "Gambling" is an Essential Element of IGBA
             that Must be Determined by the Jury ................................................ 11

         2.   IGBA Does Not Simply Defer to the States to Define
             "Gambling" ......................................................................................... 14

         3.   The Government May Not Rely Upon a Non-Statutory Definition
             of "Gambling" .................................................................................. 17

II.  Defendants Should be Permitted to Introduce Evidence of Their Knowledge and
     Good Faith ......................................................................................................... 21

     A.   UIGEA Requires Proof of Knowledge that Online Poker is Illegal Under
         Federal or State Law and a Game of Chance ............................................. 21

         1.   UIGEA Requires Proof of Knowledge that the Conduct was
             Illegal Under Federal or State Law .................................................... 25

         2.   UIGEA Requires Proof of Knowledge that Online Poker is a
             Game of Chance ................................................................................. 27

     B.   IGBA Requires Proof of Knowledge That Online Peer-to-Peer Poker is
         "Gambling" Under Federal Law and Violates State Law ........................... 28

     C.   Evidence of Defendants' Good Faith is Relevant to the Government's
         Charge of Conspiracy to Launder Money .................................................. 32

Conclusion ................................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Allen,*
   377 P.2d 280 (Cal. 1962) .................................................................................... 7

*American Amusements Co. v. Nebraska Department of Revenue,*
   807 N.W.2d 492 (Neb. 2011) ............................................................................. 8

*Apprendi v. New Jersey,*
   530 U.S. 466, 120 S. Ct. 2348 (2000) ....................................................... passim

*Bayer v. Johnson,*
   349 N.W.2d 447 (S.D. 1984) .............................................................................. 7

*Begay v. United States,*
   553 U.S. 137, 128 S. Ct. 1581 (2008) ........................................................ 18, 19

*Boardwalk Regency Corp. v. Attorney General of State of N.J.,*
   457 A.2d 847 (N.J. Super. Ct. Law Div. 1982) ............................................ 9, 10

*City of New York v. Beretta U.S.A. Corp.,*
   524 F.3d 384 (2d Cir. 2008) ............................................................................. 19

*Coleman v. United States,*
   329 F.3d 77 (2d Cir. 2003) ................................................................................. 3

*Commonwealth v. Lake,*
   57 N.E.2d 923 (Mass. 1944) .............................................................................. 8

*Community Bank, N.A. v. Riffle,*
   617 F.3d 171 (2d Cir. 2010) ............................................................................. 15

*Connecticut Bar Association v. United States,*
   620 F.3d 81 (2d Cir. 2010) ............................................................................... 28

*Consolidated Rail Corp. v. United States,*
   896 F.2d 574 (D.C. Cir. 1990) ........................................................................ 15

*Dodd v. Gregory,*
   663 P.2d 161 (Wash. Ct. App. 1983) ................................................................ 9

*Flores-Figueroa v. United States,*
   556 U.S. 646, 129 S. Ct. 1886 (2009) ........................................... 22, 23, 24, 25

*Gaines-Tabb v. ICI Explosives USA, Inc.,*
   995 F. Supp. 1304 (W.D. Okla. 1996) ...................................................... 13, 14

*General Electric Co. v. Occupational Safety and Health Review Commission,*
    583 F.2d 61 (2d Cir. 1978)................................................................................................19

*Henderson v. State,*
    616 So. 2d 406 (Ala. Crim. App. 1993)........................................................................18

*Johnson v. United States,*
    130 S. Ct. 1265 (2010).....................................................................................................16

*Las Vegas Hacienda, Inc. v. Gibson,*
    359 P.2d 85 (Nev. 1961).....................................................................................................7

*Leocal v. Ashcroft,*
    543 U.S. 1, 125 S. Ct. 377 (2004)..............................................................................7 n.1

*Liparota v. United States,*
    471 U.S. 419, 105 S. Ct. 2084 (1985)................................................................... passim

*Meese v. Keene,*
    481 U.S. 465, 107 S. Ct. 1862 (1987)......................................................................17, 18

*Molloy v. Metroplitan Transportation Authority,*
    94 F.3d 808 (2d Cir. 1996)..............................................................................................19

*Morrow v. State,*
    511 P.2d 127 (Alaska 1973)...............................................................................................8

*Rogers v. United States,*
    522 U.S. 252, 118 S. Ct. 673 (1998)..............................................................................30

*Sanabria v. United States,*
    437 U.S. 54, 98 S. Ct. 2170 (1978).................................................................................12

*Spina v. Department of Homeland Sec.,*
    470 F.3d 116 (2d Cir. 2006)............................................................................................16

*Staples v. United States,*
    511 U.S. 600, 114 S. Ct. 1793 (1994)..........................................................28, 29, 30, 31

*State v. Koo,*
    647 P.2d 889 (Okla. Crim. App. 1982)............................................................................9

*State v. Stroupe,*
    76 S.E.2d 313 (N.C. 1953)................................................................................................8

*State ex rel. Tyson v. Ted's Game Enters.,*
    893 So. 2d 355 (Ala. Civ. App. 2002).............................................................................9

*Stenberg v. Carhart,*
    530 U.S. 914, 120 S. Ct. 2597 (2000) ................................................................. 18

*Taylor v. United States,*
    495 U.S. 575, 110 S. Ct. 2143 (1990) ............................................................. 16, 17

*Thole v. Westfall,*
    682 S.W.2d 33 (Mo. Ct. App. 1984) ..................................................................... 9

*Three Kings Holdings, L.L.C. v. Six,*
    255 P.3d 1218 (Kan. Ct. App. 2011) ..................................................................... 8

*Triestman v. United States,*
    124 F.3d 361 (2d Cir. 1997) ................................................................................ 15

*United States v. Ables,*
    167 F.3d 1021 (6th Cir. 1999) ........................................................................... 31

*United States v. Adair,*
    227 F. Supp. 2d 586 (W.D. Va. 2002) ............................................................... 21

*United States v. Baker,*
    262 F.3d 124 (2d Cir. 2001) .................................................................................. 5

*United States v. Booker,*
    543 U.S. 220, 125 S. Ct. 738 (2005) ..................................................................... 4

*United States v. Bronx Reptiles, Inc.,*
    217 F.3d 82 (2d Cir. 2000) ............................................................................. 23, 24

*United States v. Conley,*
    37 F.3d 970 (3d Cir. 1994) .................................................................................. 30

*United States v. Conley,*
    859 F. Supp. 909 (W.D. Pa. 1994) ................................................................ 14 n.3

*United States v. Cook,*
    922 F.2d 1026 (2d Cir. 1991) ........................................................................ 14 n.3

*United States v. Dauray,*
    215 F.3d 257 (2d Cir. 2000) ............................................................................ 7, 19

*United States v. Flores-Villar,*
    536 F.3d 990 (9th Cir. 2008), *aff'd,* 131 S. Ct. 2312 (2011) ............................. 32

*United States v. French,*
    312 F.3d 1286 (9th Cir. 2002) ....................................................................... 16-17

*United States v. Gaudin,*
    515 U.S. 506, 115 S. Ct. 2310 (1995) ............................................................................ passim

*United States v. Grey,*
    56 F.3d 1219 (10th Cir. 1995) .......................................................................................14 n. 3

*United States v. Griffith,*
    No. 99CR786(HB), 2000 WL 1253265 (S.D.N.Y. Sept. 5 2000) ...........................................28

*United States v. Hawes,*
    529 F.2d 472 (5th Cir. 1976) .......................................................................................31

*United States v. Hunter,*
    478 F.2d 1019 (7th Cir. 1973) ......................................................................................12

*United States v. Kaczowski,*
    114 F. Supp. 2d 143 (W.D.N.Y. 2000) .......................................................................... 12-13

*United States v. Kuehne,*
    547 F.3d 667 (6th Cir. 2008) .........................................................................................4

*United States v. Lanier,*
    520 U.S. 259, 117 S. Ct. 1219 (1997) ...........................................................................32 n.5

*United States v. Lanzotti,*
    205 F.3d 951 (7th Cir. 2000) .......................................................................................14 n.3

*United States v. Lawrence,*
    07 CR 597 (S.D.N.Y. June 29, 2007) ...........................................................................13, 30

*United States v. Lyons,*
    10 CR 10159 (D. Mass. Dec. 15, 2011) ........................................................................ 26-27

*United States v. Lyons,*
    No. 10-cr-10159-PBS, 2011 WL 2581954 (D. Mass. June 28, 2011).....................................26

*United States v. Mancebo-Santiago,*
    875 F. Supp. 1030 (S.D.N.Y. 1995).................................................................................10

*United States v. Marder,*
    48 F.3d 564 (1st Cir. 1995).............................................................................................8

*United States v. Martinelli,*
    454 F.3d 1300 (11th Cir. 2006) ......................................................................................26

*United States v. Marzo,*
    312 F. App'x 356 (2d Cir. 2008) .....................................................................................10

- v -

*United States v. Ness,*
   565 F.3d 73 (2d Cir. 2009)..........................................................................................33

*United States v. Nicolo,*
   597 F. Supp. 2d 342 (W.D.N.Y. 2009) ......................................................................33

*United States v. O'Brien,*
   131 F.3d 1428 (10th Cir. 1997) ................................................................................30

*United States v. Papa,*
   533 F.2d 815 (2d Cir. 1976).......................................................................................26

*United States v. Parker,*
   30 F.3d 542 (4th Cir. 1994) ...............................................................................19, 20

*United States v. Parkes,*
   497 F.3d 220 (2d Cir. 2007)....................................................................................4, 5

*United States v. Peeples,*
   377 F.2d 205 (2d Cir. 1967).......................................................................................25

*United States v. Quintero,*
   165 F.3d 831 (11th Cir. 1999) ..................................................................................33

*United States v. Ramirez,*
   347 F.3d 792 (9th Cir. 2003) ....................................................................................17

*United States v. Reyes-Padron,*
   538 F.2d 33 (2d Cir. 1976).........................................................................................26

*United States v. Rieger,*
   942 F.2d 230 (3d Cir. 1991).................................................................................14 n.3

*United States v. Rivera,*
   No. 89 CR 00031, 1992 WL 135231 (E.D.N.Y. June 3, 1992), *aff'd sub nom. United States v. Restrepo,* 990 F.2d 622 (2d Cir. 1993) ......................................................33

*United States v. Roberts,*
   363 F.3d 118 (2d Cir. 2004)......................................................................................20

*United States v. Shim,*
   584 F.3d 394 (2d Cir. 2009).......................................................................................23

*United States v. Smith,*
   13 F.3d 380 (10th Cir. 1993) .....................................................................................20

*United States v. Tarter,*
   522 F.2d 520 (6th Cir. 1975) ...............................................................................14 n.3

*United States v. Walker*,
    299 F. App'x 273 (4th Cir. 2008) ................................................................4

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64, 115 S. Ct. 464 (1994) ..........................................................23

*United States v. Zannino*,
    895 F.2d 1 (1st Cir. 1990) ....................................................................14 n.3

*Western Union Telegraph Co. v. Lenroot*,
    323 U.S. 490, 65 S. Ct. 335 (1945) ..........................................................18

*Wexler v. Brothers Entertainment Group, Inc.*,
    457 N.W.2d 218 (Minn. Ct. App. 1990) ..................................................10

*Wills v. Russell*,
    100 U.S. 621 (1879) ...........................................................................20-21

### STATUTES

7 U.S.C. § 2024 ...............................................................................25, 34

18 U.S.C. § 42 ........................................................................................23

18 U.S.C. § 42 ........................................................................................13

18 U.S.C. § 922 ......................................................................................16

18 U.S.C. § 924 ......................................................................................16

18 U.S.C. § 1028 ....................................................................................22

18 U.S.C. § 1512 ......................................................................................5

18 U.S.C. § 1955 ............................................................................. passim

18 U.S.C. § 1956 ...........................................................................3, 32, 33

18 U.S.C. § 1957 ....................................................................................32

18 U.S.C. § 2252 ....................................................................................23

21 U.S.C. § 174 ......................................................................................25

21 U.S.C. § 860 ......................................................................................20

31 U.S.C. § 5361 ......................................................................................1

31 U.S.C. § 5362 ............................................................................. passim

31 U.S.C. § 5363 ........................................................................................................ 6, 22, 24, 27

## OTHER AUTHORITIES

116 Cong. Rec. 603 (daily ed. Jan. 21, 1970) ............................................................................. 12

Memorandum from Department of Justice Office of Legal Counsel, *Whether Proposals
  by Illinois and New York to Use the Internet and Out-of-State Transaction Processors
  to Sell Lottery Tickets to In-State Adults Violate the Wire Act* (Sept. 20, 2011) ............... 15 n.4

The Shorter Oxford English Dictionary on Historical Principles (5th Ed. 2002). ........................... 7

## Introduction

Defendants Chad Elie and John Campos respectfully submit this memorandum of law in support of their motion in limine to permit defendants to present two categories of evidence that the government seeks to preclude or limit. First, defendants seek to introduce evidence that peer-to-peer online poker is predominantly a game of skill to challenge the government's allegations that the charged conduct constitutes "unlawful Internet gambling" and a "game subject to chance" under the Unlawful Internet Gambling Enforcement Act ("UIGEA"), 31 U.S.C. § 5361 *et seq.*, as well as proscribed "gambling" under the Illegal Gambling Businesses Act ("IGBA"), 18 U.S.C. § 1955. Second, and independently, defendants seek to introduce evidence of their good faith and lack of knowledge of the necessary elements that the government must prove to establish violations of UIGEA, IGBA, and money laundering.

The government has the burden of proving every element of the alleged offenses, including proving that online peer-to-peer poker meets the federal statutory definitions of "gambling" under the statutes charged. In the case of UIGEA, the government must prove that online poker is "unlawful Internet gambling" because it is a "game subject to chance." Under IGBA, the government must prove that online poker belongs in the same class of specifically enumerated activities that the statute defines as "gambling." In both cases, it is for the jury to determine whether the government has met its burden, and in both cases, defendants have the right to put relevant evidence before the jury in support of defendants' arguments that these factual elements have not been met.

In addition, the government also must prove that the defendants possessed the requisite knowledge for each of the offenses charged. Defendants therefore should be permitted to present to the jury evidence of their knowledge about whether poker constitutes "unlawful Internet gambling" or "gambling" as defined under UIGEA and IGBA, and good faith beliefs

about its lawfulness. Similarly, with respect to money laundering, the government must prove that defendants were engaged in monetary transactions that they knew were either in promotion of, or derived from, unlawful activity. Proof of defendants' lack of knowledge of the factual elements of the statutes, and good faith belief in the lawfulness of the conduct, is clearly relevant and should be admitted.

Despite the government's efforts to trivialize defendants' arguments that poker does not constitute "gambling" under the applicable laws, and that they did not know that poker is "gambling" under those laws, the validity of those arguments is ultimately for the jury – not the government – to decide. In fact, the government cannot dispute that well-regarded lawyers and law firms had staked their reputations on the conclusion that poker is not the type of activity proscribed by federal gambling laws because winning and losing is primarily determined by the skill of the players involved, rather than by chance as is typical of "gambling" activities. Nor can the government dispute that these lawyers and law firms provided detailed written legal opinions supporting that very conclusion, and that those opinions were given to the defendants in this case.

For all the reasons discussed below, the defendants should be permitted to challenge the government's proof as to all the elements of UIGEA, IGBA, and money laundering by presenting evidence regarding the characteristics of poker, their lack of knowledge of the necessary factual elements, and their good faith. It is respectfully submitted that a pretrial ruling on these evidentiary issues, as well as certain of the legal standards under which this evidence is evaluated, is necessary to enable the parties to effectively prepare for trial, including the presentation of opening statements and expert testimony.

## Argument

**I.    Defendants Should Be Permitted to Introduce Evidence Showing that the Peer-to-Peer Online Poker Activities Alleged Here Do Not Fall Under UIGEA or IGBA**

It is well-established that the Fifth and Sixth Amendments permit the state to deprive citizens of their liberty only when a jury has determined that all elements of a criminal charge have been proven beyond a reasonable doubt. Despite this fundamental protection, the Supreme Court perceived that, in certain circumstances, courts were beginning to encroach on the role of the jury by substituting their own decision-making for that of the jury and it issued a series of seminal rulings to halt such encroachment.

In *United States v. Gaudin*, 515 U.S. 506, 512-13, 115 S. Ct. 2310, 2314-15 (1995), the Supreme Court held that where an element of a crime requires the application of a legal standard to a particular set of facts, it is the job of the jury, not the court, to determine whether that standard has been met. The *Gaudin* court declared that "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Id.* at 514, 115 S. Ct. at 2316. Later, in *Apprendi v. New Jersey*, 530 U.S. 466, 484-85, 120 S. Ct. 2348, 2359 (2000), the Supreme Court expressed its concern that the Constitutional right to a jury was eroding in practice because judges were determining certain elements of penal statutes. In order to safeguard against this erosion of the jury right, the Supreme Court held that "practice must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt." *Id.* at 483-84, 120 S. Ct. at 2359.

The Second Circuit and other Courts of Appeals recognized the "dramatic changes wrought by *Apprendi.*" *Coleman v. United States*, 329 F.3d 77, 83 (2d Cir. 2003);

*United States v. Walker*, 299 F. App'x 273, 275 (4th Cir. 2008) (noting that "*Apprendi* and the cases that followed it, of course, significantly changed the legal framework in criminal cases"); *United States v. Kuehne*, 547 F.3d 667, 681 n.4 (6th Cir. 2008) (explaining that the Supreme Court "has breathed new life into the right to a jury trial in [*Apprendi*]").

      The Second Circuit's affirmance of this Court's Hobbs Act jury instruction illustrates the sea change occasioned by *Gaudin* and *Apprendi* and confirms that "the Supreme Court has sharpened our focus on the separate consideration of each element that composes an offense." *United States v. Parkes*, 497 F.3d 220, 229 (2d Cir. 2007) (citing *United States v. Booker*, 543 U.S. 220, 230, 125 S. Ct. 738, 748 (2005)). In *Parkes*, the defendant was charged with a Hobbs Act violation for participating in a drug-related robbery. *Id.* at 223. In an effort to establish an effect on interstate commerce, which is an element of the Hobbs Act, the government urged the Second Circuit to hold as a matter of law that "local narcotics activity has a substantial effect on interstate commerce" based on congressional findings and Controlled Substances Act jurisprudence. *Id.* at 228-29 (citation and quotation marks omitted). Citing *Gaudin*, the Second Circuit rejected this argument and held that "[t]he Constitution 'require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Id.* at 226 (quoting *Gaudin* at 509-10, S. Ct. at 2313-14). Noting that this Court's jury charge "respected that right," the Second Circuit explained that "[p]roving an effect on interstate commerce is . . . an element of a Hobbs Act offense, which must be proven beyond a reasonable doubt to a jury." *Id.* at 227. To that end, this Court permitted expert testimony on the factual issue of whether marijuana (the drug at issue) came "almost exclusively" from abroad. *Id.* at 231 (citation omitted).

*United States v. Baker*, 262 F.3d 124, 133 (2d Cir. 2001), further illustrates that the government may not usurp the role of the jury to determine whether the government has proven every element of the offense. In *Baker*, the Second Circuit examined a conviction for murder with intent to obstruct justice under 18 U.S.C. § 1512(a)(1). At the government's request, the court instructed the jury that it need only find that the defendant used physical force and that "physical force is self-explanatory. In this case, the murder . . . constitutes physical force." *Id.* at 128. Citing *Gaudin* and *Apprendi*, the Second Circuit found the instructions erroneous, and vacated the conviction because "the instruction [did] not require the jury to find a murder" nor "include a definition of murder" as required by the statute. *Id.*

*Gaudin, Apprendi*, and the cases that follow have thus reinvigorated the fundamental constitutional protection that there must be a jury determination as to every factual element of a criminal charge. As *Parkes* makes clear, reliance on congressional findings, common understanding, or determinations by other courts construing similar or the same statutes cannot substitute for the necessary jury determination. By settling the law in this fashion, *Gaudin, Apprendi* and their progeny also render suspect the cases that came before them to the extent that such cases failed to require a jury determination of every element of the crimes charged.

In this case, under UIGEA and IGBA, the jury must determine whether online peer-to-peer poker constitutes "unlawful internet gambling" or a "gambling business" as defined by the respective federal laws. Defendants therefore should be permitted to introduce evidence to assist the jury in making these determinations.

A.    **Under UIGEA, the Jury Must Determine Whether Chance Predominates Over Skill in Determining Outcomes in Order to Find That Peer-to-Peer Online Poker is a "Game Subject to Chance"**

UIGEA provides that "[n]o person engaged in the business of betting or wagering may knowingly accept, in connection with the participation of another person in unlawful Internet gambling," certain forms of payment. 31 U.S.C. § 5363. Thus, one necessary element for a UIGEA conviction is proof beyond a reasonable doubt that payments are being made in connection with "unlawful Internet gambling."

UIGEA defines "unlawful Internet gambling" as "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 31 U.S.C. § 5362(10)(A). In turn, the statute defines "bet or wager" to mean "the staking or risking by any person of something of value upon the outcome of a contest of others, a sporting event, or a game subject to chance, upon an agreement or understanding that the person or another person will receive something of value in the event of a certain outcome." *Id.* § 5362(1)(A).

When these definitions are synthesized into the operative provision of 31 U.S.C. § 5363, as relevant here, UIGEA prohibits persons engaged in the business of betting or wagering from knowingly accepting certain payments in connection with a game subject to chance, where doing so is illegal under the law where the bet or wager is initiated, received, or otherwise made. The jury must therefore determine whether online peer-to-peer poker constitutes a "game subject to chance" and defendants should be permitted to introduce evidence

- 6 -

on this factual question. *See Apprendi*, 530 U.S. at 476-77, 120 S. Ct. at 2355-56; *Gaudin*, 515 U.S. at 509-10, 115 S. Ct. at 2313.[1]

This Court will be the first in the country to rule as to the legal standard for determining whether an activity is a "game subject to chance" under UIGEA. Although Congress did not expressly define the amount of chance required by the phrase "game subject to chance," the appropriate test to be applied by the jury is whether chance is the predominant factor. Terms in a statute take their ordinary meaning, in light of applicable canons of statutory construction. *See United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). Under its ordinary meaning, a "game subject to chance" is one in which chance, rather than skill, predominantly determines the outcome of the game. The phrase "subject to" is an adjective that means "dependent or conditional upon." The Shorter Oxford English Dictionary on Historical Principles 3085 (5th Ed. 2002). This definition implies that the outcome of the game must be dependent upon chance such that it is at least predominantly determined by chance in order for a game to be a "game subject to chance."

Courts that interpret state gambling statutes regularly hold that phrases such as "game of chance" require proof that chance predominates over skill. *See, e.g., Bayer v. Johnson*, 349 N.W.2d 447, 449 (S.D. 1984) (holding that "[a] 'game of chance' is a contest wherein chance predominates over skill" (citation omitted)); *In re Allen*, 377 P.2d 280, 281 (Cal. 1962) ("The test is not whether the game contains an element of chance or an element of skill but which of them is the dominating factor in determining the result of the game."); *Las Vegas Hacienda, Inc. v. Gibson*, 359 P.2d 85, 87 (Nev. 1961) ("The test of the character of a game is not whether it contains an element of chance or an element of skill, but which is the dominating

---

[1] Understanding an element of a crime through a separate definitional statute is a standard manner of statutory interpretation. *See, e.g., Leocal v. Ashcroft*, 543 U.S. 1, 7 n.4, 125 S. Ct. 377, 381 n.4 (2004).

element."); *State v. Stroupe*, 76 S.E.2d 313, 316 (N.C. 1953) ("In the absence of statutes and

other indicia to the contrary, most courts have reasoned that there are few games, if any, which

consist purely of chance or skill, and that therefore a game of chance is one in which the element

of chance predominates over the element of skill, and a game of skill is one in which the element

of skill predominates over the element of chance.") (citation and internal quotation marks

omitted); *see also Am. Amusements Co. v. Nebraska Dep't of Revenue*, 807 N.W.2d 492, 502

(Neb. 2011) (interpreting the statutory phrase "determined by an element of chance" to mean

"predominantly caused by chance").

Not only do *Gaudin, Apprendi* and their progeny mandate that all elements of an

offense must be determined by the jury, but courts have historically and regularly held that the

factual question of whether chance or skill predominates in a particular game is to be determined

by the jury or fact finder. *See, e.g., United States v. Marder*, 48 F.3d 564, 569 (1st Cir. 1995)

(jury assessed evidence regarding the role of chance and skill in video poker, including

testimony about how game is played, and in court demonstrations of how the machines operate,

to determine whether chance was dominant factor under Massachusetts law); *Three Kings*

*Holdings, L.L.C. v. Six*, 255 P.3d 1218, 1226 (Kan. Ct. App. 2011) (following "[o]ther states

[that] have found that the determination of whether a game is dominated by skill or chance is a

factual question" in considering testimony by game designers, academic experts, and players to

determine whether a card game was a "game of chance"); *Morrow v. State*, 511 P.2d 127, 130

(Alaska 1973) (remanding for trial with direction that state meet its burden of showing that

chance predominates because "the question of which element predominates – skill or chance – is

for the trier of fact to determine"); *Commonwealth v. Lake*, 57 N.E.2d 923, 925 (Mass. 1944)

(holding that "[w]hether the game was predominantly one of chance or of skill was a question for

the jury" and noting that it is appropriate to look beyond the mere mechanics of the game and

consider "whether as actually played by the people who actually play it chance or skill is the

prevailing factor").[2]

In cases where a materiality test is applied, rather than a predominance test, the

statutes typically state that materiality shall be the standard, in stark contrast to the language of

UIGEA. *See, e.g., Boardwalk Regency Corp. v. Att'y Gen. of State of N.J.*, 457 A.2d 847, 850

(N.J. Super. Ct. Law Div. 1982) (N.J.S.A. 2C:37-1(a) provides that "contest of chance" is

defined as: "Any contest, game, pool, gaming scheme or gaming device in which the outcome

depends in a material degree upon an element of chance, notwithstanding that skill of the

contestants or some other persons may also be a factor therein."); *Thole v. Westfall*, 682 S.W.2d

33, 36 (Mo. Ct. App. 1984) (statutory language substantially identical to New Jersey); *State ex*

*rel. Tyson v. Ted's Game Enters.*, 893 So. 2d 355, 366 (Ala. Civ. App. 2002) (same); *Dodd v.*

*Gregory*, 663 P.2d 161, 163 (Wash. Ct. App. 1983) (same); *State v. Koo*, 647 P.2d 889, 895

(Okla. Crim. App. 1982) (a person who "bets or plays" any "game of chance or in which chance

is a material element," shall be guilty of a misdemeanor).

Even if a materiality test were to be applied to UIGEA notwithstanding its

language, it would still be for the jury to determine whether chance is a material or significant

factor in online peer-to-peer poker, and evidence of the relative impacts of skill and chance on

the game would still be appropriate. *See, e.g., Dodd*, 663 P.2d at 163 (determining whether nine

---

[2] That "predominantly" is used in § 5362(1)(B) but not in § 5362(1)(A) is inconsequential. Section 5362(1)(A), the operative section here, sets forth the definition of "bet or wager" as "mean[ing]" the staking of something of value on the outcome of a contest of others, a sporting event or a game subject to chance. Sections 5362(1)(B) – (E) merely provide examples and clarification of those things that are either included in or excluded from the term "bet or wager." Section 5362(1)(B) does not speak to the quantum of chance required to bring a game under the rubric of § 5362(1)(A). The long list of courts interpreting statutes prohibiting "games of chance" as requiring that chance predominate over skill notwithstanding that no standard is set forth in the statute, demonstrates that the failure to include the word "predominantly" as a modifier of UIGEA's "game subject to chance," cannot be read to reflect intent that no such test be applied. Indeed, had Congress intended a lesser standard to apply, it could have used language to so indicate, such as the phrase "game *partially* subject to chance."

ball was a "contest of chance" under a materiality standard based on the evidence presented rather than as a matter of law); *Boardwalk Regency Corp.*, 457 A.2d at 850 (analyzing expert testimony and exhibits admitted into evidence to determine whether backgammon depends "in a material degree upon an element of chance"); *Wexler v. Bros. Entm't Grp., Inc.*, 457 N.W.2d 218, 223 (Minn. Ct. App. 1990) (finding factual issue as to whether telephonic trivia game with monetary prizes constituted illegal gambling in evaluating whether the award of money was "dependent upon chance although the chance is accompanied by some element of skill"). In *Gaudin*, the Supreme Court held that "materiality" determinations require application of a legal standard to a set of facts and "the application-of-legal-standard-to-fact sort of question" has typically been resolved by juries. *Gaudin*, 515 U.S. at 512, 115 S. Ct. at 2314 (citation omitted). The Second Circuit has likewise held that when materiality is an element of a crime, a jury "could not convict [defendant] unless the government proved [materiality] beyond a reasonable doubt." *United States v. Marzo*, 312 F. App'x 356, 358 (2d Cir. 2008).

It is respectfully submitted that determination of the legal standard for the quantum of chance required to qualify as a "game subject to chance" is necessary for the parties to prepare for trial, including planning the presentation of evidence such as expert testimony, and opening statements. *See, e.g., United States v. Mancebo-Santiago*, 875 F. Supp. 1030, 1032 (S.D.N.Y. 1995) (acknowledging that "a decision on the motion *in limine* is important to [both parties], because it would enable them to know what types of evidence to refer to in opening statements as well as what the scope of proof will be at trial"). However, whatever test is ultimately applied is one for the jury's application. Therefore, defendants should be permitted to introduce evidence to the jury about the influence of skill and chance on the peer-to-peer online poker activities at issue in this case.

**B.     The Jury Must Determine Whether Online Peer-to-Peer Poker is "Gambling" Under IGBA**

Defendants also should be permitted to present evidence that poker does not fall under the statutory definition of "gambling" under IGBA, which is described by reference to an illustrative list of activities with common characteristics. 18 U.S.C. § 1955(b)(2). The government would wrest from the jury the question of whether poker is similar to the enumerated activities, apparently on the basis of state laws, country songs, or colloquialisms. Its arguments are counter-textual, contrary to the teachings of *Gaudin*, *Apprendi*, and their progeny, and rely upon case law that assumed, but did not even discuss, whether "gambling" was a separate element of IGBA necessary for conviction.

The correct reading of IGBA – one that gives effect to every statutory term – recognizes "gambling" as an obvious and essential statutory element of the Illegal *Gambling* Businesses Act that the government must prove to the jury, and the defendants should be permitted to contest by presenting contrary evidence.

**1.     Whether Poker is "Gambling" is an Essential Element of IGBA that Must be Determined by the Jury**

IGBA provides that "[w]hoever conducts, finances, manages, supervises, directs or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 1955(a). IGBA defines an "illegal gambling business" as "a gambling business" that violates state law, involves five or more persons, and has been in operation for 30 days or had gross revenue of $2,000 in any single day. 18 U.S.C. § 1955(b)(1). "Gambling" is defined as including but not limited to "pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein." 18 U.S.C. § 1955(b)(2).

- 11 -

To prove a violation of IGBA, the government must first prove beyond a reasonable doubt that defendants conducted, financed, managed, supervised, directed, or owned a "gambling business" and then separately move on to prove that such a business was illegal because, among other things, it violates state law. A business is not a "gambling business" under federal law if it does not involve conduct that meets IGBA's definition of "gambling." 18 U.S.C. § 1955(b)(2).

The legislative history of IGBA confirms that Congress intended "gambling" as defined under the statute to be a separate element of the offense. Senator Allott explained that IGBA "defines an 'illegal gambling business' as one including such forms of betting as bookmaking or numbers *and* which first, is a violation of State law; second, involves five or more persons . . . ." 116 Cong. Rec. 603 (daily ed. Jan. 21, 1970) (statement of Sen. Allott) (emphasis added).

In *United States v. Hunter*, then-Judge Stevens also recognized that the federal definition of gambling is a separate element from illegality under state law: "As defined in the statute, 'gambling' includes but is not limited to 'pool-selling, book-making, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.' In this case, appellants concede that their activities *constituted 'gambling' as so defined, and* that they were conducted in violation of the law of Indiana." 478 F.2d 1019, 1021 n.2 (7th Cir. 1973) (emphasis added). Judge Stevens thus clearly recognized that the federal definition of gambling and illegality under state law are separate elements. *See also Sanabria v. United States*, 437 U.S. 54, 70, 98 S. Ct. 2170, 2182 (1978) (holding that the "allowable unit of prosecution under § 1955" is participation in a "gambling business" which business must then violate state law); *United States v. Kaczowski*, 114 F. Supp.

- 12 -

2d 143, 152 (W.D.N.Y. 2000) (identifying definition of conduct as "gambling" as a separate

element from illegality under state law).

Treating the factual determination of whether the charged conduct constitutes

"gambling" as a separate element of the offense before reaching the other elements is consistent

with the identification of the elements of an IGBA charge by the United States Attorney in this

District. In *United States v. Lawrence*, 07 CR 597 (S.D.N.Y. June 29, 2007), the United States

Attorney's Office expressly identified during a plea colloquy that knowingly conducting an

illegal gambling business under federal law is a separate element from the violation of state law,

stating:

> The second object of the conspiracy is to violate the Illegal
> Gambling Business Act. That also has four elements. The first is
> that a violator knowingly conducts an illegal gambling business.
> The second, that that illegal gambling business violate the laws of
> a state. Here the laws at issue are the laws of the State of New
> York. Third, that the business involved five or more people who
> conduct the business, and, fourth, that the business is in
> substantially continuous operation for more than 30 days, or has a
> gross revenue of $2,000 in any single day.

*See* Transcript of Plea Colloquy, Exh. 2 at 16.

This manner of statutory construction, endorsed by the government in *Lawrence*,

is consistent with the construction of other statutes that include a state law violation as an

element of the offense. For example, in *Gaines-Tabb v. ICI Explosives USA, Inc.,* 995 F. Supp.

1304 (W.D. Okla. 1996), the court examined whether the distribution of low density explosive

grade ammonium nitrate ran afoul of the federal law prohibiting knowingly "distribut[ing] any

explosive material, to any person in any state where the purchase, possession, or use of such

explosive materials would be in violation of any state law or any published ordinance applicable

at the place of distribution." *Id.* at 1319-20 (citing 18 U.S.C. § 842(e)). The federal statute

defines "explosive materials" to include "explosives" which are thereafter defined as mixtures or

devices whose "primary or common purpose" is to function by explosion, including but not limited to a list of particular items. *Id.* at 1319. The court held that proof of a violation of the federal statute requires a showing that the alleged explosive "is an 'explosive' within the meaning of [the] federal statute[]" and only then does the jury consider whether the alleged explosive "is an 'explosive' within the meaning of the state law which was allegedly violated." *Id.* at 1320. Because the ammonium nitrate was distributed for its intended purposes as a fertilizer, the court held that it did not meet the federal definition and therefore did not violate the federal statute. *Id.* at 1321.

Just as in *Gaines-Tabb*, it is not enough under IGBA to simply prove illegality under state law. All the elements of the federal statute must be proved, including whether poker qualifies as "gambling" under the federal definition.[3]

### 2. IGBA Does Not Simply Defer to the States to Define "Gambling"

Both the language of IGBA and precedents interpreting statutes with analogous construction to IGBA support the conclusion that the jury must determine that the charged activity satisfies a federal definition of "gambling" in addition to being unlawful under state law. The plain text of the statute requires a definition of a "gambling business" independent of its illegality under state law. Collapsing the elements as the government posits would create the

---

[3] Although some courts construing IGBA may not have separately addressed whether the activity in question met the federal definition of "gambling," in those cases, either the issue was not raised, or the activity plainly fell within IGBA's definition of gambling. *See, e.g., United States v. Cook*, 922 F.2d 1026 (2d Cir. 1991) (slot machines). In the handful of IGBA cases involving poker, several involved video poker, which significantly differs from table and online poker because players play against the house rather than against other competitors. *See, e.g., United States v. Grey*, 56 F.3d 1219 (10th Cir. 1995); *United States v. Lanzotti*, 205 F.3d 951 (7th Cir. 2000); *United States v. Conley*, 859 F. Supp. 909 (W.D. Pa. 1994). In the few reported cases involving table poker, courts simply assumed, without proof or argument by either party, that poker is statutory "gambling" under IGBA. *See United States v. Rieger*, 942 F.2d 230 (3d Cir. 1991); *United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990); *United States v. Tarter*, 522 F.2d 520 (6th Cir. 1975). These cases also have limited value because they predate the more rigorous requirements mandated by *Gaudin, Apprendi*, and their progeny.

following circular definition – an illegal *gambling business* is a *gambling business* that is illegal under state law, without otherwise giving meaning to "gambling business."

IGBA's definition of "gambling" – which is a separate subsection of the statute from its criminal prohibition – contains no mention, express or implied, of state law, and therefore should not be read to hinge on what state law regards as "gambling." Indeed, if Congress intended to defer to the states to determine what constitutes "gambling," there would have been no need to define the term or provide illustrative examples. *See, e.g., Cmty. Bank, N.A. v. Riffle*, 617 F.3d 171, 175 (2d Cir. 2010) (rejecting interpretation of statute that would render certain terms "meaningless"); *Triestman v. United States*, 124 F.3d 361, 376 (2d Cir. 1997) ("'[W]e assume that Congress intended that language which it chose to employ actually was to have meaning; effect must be given, if possible, to every word, clause and sentence of a statute . . . so that no part will be inoperative or superfluous, void or insignificant.'" (quoting *Consol. Rail Corp. v. United States*, 896 F.2d 574, 579 (D.C. Cir. 1990))). In order to give meaning to each of the statute's provisions, 18 U.S.C. § 1955(b)(2) must therefore be understood as defining the particular types of activities that constitute "gambling" under the federal statute, which are unlawful under the statute if carried on by a "business" operating in the manner set forth in subsection (b)(1)(i)-(iii).[4]

Even when a federal statute defers to state law for determination of the *illegality* of certain conduct, as IGBA does, federal definitions of the operative language in federal statutes continue to apply. For example, the federal Career Criminals Amendment Act provides a

---

[4] The Department of Justice's recent rejection of the Criminal Division's expansive reading of the Wire Act evinces the tenets of statutory construction that one must interpret a statute in a way that makes sense of its provisions as a whole and gives independent meaning to each portion of its text. *See* Exh. 3 at 4, n.5, Memorandum from Department of Justice Office of Legal Counsel, *Whether Proposals by Illinois and New York to Use the Internet and Out-of-State Transaction Processors to Sell Lottery Tickets to In-State Adults Violate the Wire Act* (Sept. 20, 2011) (rejecting Criminal Division's expansive construction of the Wire Act in favor of a more narrow application to sporting events because Criminal Division's interpretation of statute rendered meaningless and superfluous a express provision of the statute).

sentence enhancement for a defendant convicted of a gun offense who has three prior convictions

for specified violent offenses including "burglary." 18 U.S.C. §§ 922(g), 924(e). In *Taylor v.*

*United States*, 495 U.S. 575, 110 S. Ct. 2143 (1990), the Supreme Court held that the statute is

only satisfied when the conduct giving rise to a burglary conviction under state law meets a

federal definition of "burglary." The Supreme Court held that it was "implausible that Congress

intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted

by the State of conviction." *Id.* at 590, 110 S. Ct. at 2154. This conclusion was motivated in part

by the Court's recognition that different states have different definitions of "burglary," some of

which include conduct such as shoplifting or theft of goods from an unoccupied automobile that

are not the sort of violent conduct contemplated by federal law. *Id.* at 591-92, 110 S. Ct. at

2154-55. The Supreme Court refused to look to the law of the state of conviction even though

there was no express definition of "burglary" in the federal statute, but instead crafted a federal

definition that would be uniformly applied. *Id.* at 598, 110 S. Ct. at 2158. The *Taylor* Court

found that the prior convictions must meet a federal definition of burglary regardless of the

determination of the state of conviction and even though there was no express federal statutory

definition. Under IGBA where Congress *expressly* delineated the activities that qualify as

"gambling" under the federal statute, it is clear that the government must prove that online peer-

to-peer poker falls within the federal definition, regardless of state law. *See also Johnson v.*

*United States*, 130 S. Ct. 1265, 1269 (2010) ("The meaning of 'physical force' in §

924(e)(2)(B)(i) is a question of federal law, not state law. And in answering that question we are

not bound by a state court's interpretation of a similar – or even identical – statute."); *Spina v.*

*Dep't of Homeland Sec.*, 470 F.3d 116, 126-27 (2d Cir. 2006) ("[S]tate law does not, in any

event, control our construction of" the federal Immigration and Nationality Act); *United States v.*

*French*, 312 F.3d 1286, 1287 (9th Cir. 2002) ("[R]eliance on state law is misplaced in light of the fact that it is the federal definition that controls in applying federal recidivism statutes." (citation and internal quotation marks omitted)); *United States v. Ramirez*, 347 F.3d 792, 799 (9th Cir. 2003) (when construing federal sentencing guidelines, "we must apply a uniform, federal definition, not dependent upon the vagaries of state law") (citation and internal quotation marks omitted).

Therefore, regardless of whether the charged conduct is alleged to be illegal under state law, the government must prove that the conduct constitutes "gambling" under IGBA and defendants should be permitted to introduce evidence to challenge that proof.

### 3.    The Government May Not Rely Upon a Non-Statutory Definition of "Gambling"

This Court should also reject the government's contention that defendants should not be permitted to introduce evidence that peer-to-peer online poker is not gambling under IGBA because, in the government's view, poker obviously meets some extra-statutory colloquial definition of gambling. *See* Gov't Response to Defendants' Pre-Trial Motions, dated Nov. 4, 2011, at 14 (arguing in response to defendants' motion to dismiss that "[p]oker has, throughout history, been understood to be a kind of gambling" and citing, among other things, the country music song "The Gambler").

When a statute describes what its operative terms are intended to mean, as IGBA does in the case of "gambling," there is no need to look anywhere but the statute itself for the definitions of those terms. In *Meese v. Keene*, 481 U.S. 465, 484, 107 S. Ct. 1862, 1873 (1987), for example, the Supreme Court reversed an injunction because the lower court had relied on a colloquial definition of the term "political propaganda" rather than a statutory definition. The *Meese* court stated that "[i]t is axiomatic that the statutory definition of the term excludes

- 17 -

unstated meanings of that term." *Id.* The *Meese* court further explained that "[a]s judges it is our duty to construe legislation as it is written, not as it might be read by a layman, or as it might be understood by someone who has not even read it." *Id.* at 484-85, 107 S. Ct. at 1873. Similarly, in the gaming context, it is not enough to simply label an activity "gambling" or a "lottery" but instead the government must prove that the activity is covered by the statute. *Henderson v. State*, 616 So. 2d 406, 412 (Ala. Crim. App. 1993) (noting that "simply referring to activity as a 'lottery' without proving that that activity met the statutory definition of a lottery will not support a conviction for promoting gambling"). *See also Stenberg v. Carhart*, 530 U.S. 914, 942, 120 S. Ct. 2597, 2615 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."); *Western Union Tel. Co. v. Lenroot*, 323 U.S. 490, 502, 65 S. Ct. 335, 341 (1945) ("Of course, statutory definitions of terms used therein prevail over colloquial meanings.").

That Congress chose to define "gambling" by way of a list of examples makes it no less of a statutory definition to which the government must adhere. The Supreme Court instructs that when a statute includes an illustrative list of proscribed conduct, the reach of the statute is narrowly limited to activities that are either specifically listed or are similar to the enumerated activities. For example, in *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008), the Court considered whether DUI convictions that were considered "violent felonies" under state law were also "violent felonies" under the federal Armed Career Criminal Act, which provides enhanced penalties for unlawful firearm ownership by individuals with three violent felony convictions. The federal statute itself defined "violent felony" to include burglary, arson, extortion, or crimes involving the use of explosives. The Supreme Court held that, notwithstanding the state law definition of "violent felony" to include DUI convictions, the

federal definition of "violent felony" could only extend to crimes similar to the specifically enumerated crimes: "[W]e should read the examples as limiting the crimes . . . to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 143, 128 S. Ct. at 1585. The *Begay* Court made clear that the illustrative list in the statute served a limiting purpose, not an expansive one: "If Congress . . . meant the statute to be all-encompassing, it is hard to see why it would have needed to include the examples at all." *Id.* at 142, 128 S. Ct. at 1585.

The Second Circuit similarly instructs that when interpreting a statute, "where general words are accompanied by a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401 (2d Cir. 2008) (citation and internal quotation marks omitted); *see also United States v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000); *Molloy v. Metro. Transp. Auth.*, 94 F.3d 808, 812 (2d Cir. 1996) (adopting a "common sense approach to interpreting a general provision in light of a list of specific illustrative provisions" so that the general term is construed to "include only things similar to the specific items in the list"); *Gen. Elec. Co. v. Occupational Safety and Health Review Comm'n*, 583 F.2d 61, 65 (2d Cir. 1978) ("The meaning of one term may be determined by reference to the terms it is associated with, and where specific words follow a general word, the specific words restrict application of the general term to things that are similar to those enumerated.").

Such an approach is required even in cases where, as with gambling, the statutorily defined term is purportedly one of common understanding. *United States v. Parker*, 30 F.3d 542 (4th Cir. 1994), illustrates this point. In *Parker*, defendant was convicted of possessing crack with intent to distribute within 1,000 feet of a "playground." *Id.* at 551 (citing

21 U.S.C. § 860(a)). The statute provided that a "playground" was "any outdoor facility (including parking lot appurtenant thereto) intended for recreation, open to the public, and with any portion thereof containing three or more separate apparatus intended for the recreation of children *including, but not limited to* sliding boards, swingsets, and teeterboards." *Id.* (citing 21 U.S.C. § 860(d)(1) (emphasis added)). The court reversed the conviction because the government failed to prove that the nearby park qualified under the statutory definition of playground despite its claim that the park had two basketball nets and a "blacktop where kids could play hopscotch as well as other games." *Id.* at 552-53. Cautioning against resorting to commonplace colloquial meanings of terms where Congress has provided an illustrative definition, the court held that the government was required to prove to the jury that there were three or more apparatuses in the park that were "akin to" the "sliding boards, swingsets, and teeterboards" identified in the statute. *Id.* at 553. *See also United States v. Smith*, 13 F.3d 380, 382-83 (10th Cir. 1993) (reversing § 860(a) conviction because park containing grassy areas, walking paths, and gazebos did not contain three apparatuses as required by statute).

Just as in *Parker* where the court found that the alleged conduct must be "akin to" an illustrative list of items in a statutory definition, in order to prove that online poker is "gambling" under IGBA, the government must prove that poker is similar to the nine enumerated activities set forth in IGBA. On this point, defendants should be permitted to introduce evidence that peer-to-peer poker differs substantially from the house-banked and lottery-type games and sports betting expressly targeted by the statute. *Cf. United States v. Roberts*, 363 F.3d 118, 123 n.1 (2d Cir. 2004) ("Under the statutory scheme here, the defendants cannot be convicted unless a jury concludes beyond a reasonable doubt that (1) they possessed a [non-enumerated substance], (2) which was similar in structure and effect to a listed controlled substance . . . .");

*Wills v. Russell*, 100 U.S. 621, 623 (1879) (court properly instructed the jury that "it was for them to find whether or not [certain vegetable substances] were of a class of non-enumerated vegetable substances similar to the enumerated articles in sect. 11 of the act . . .").

## II. Defendants Should be Permitted to Introduce Evidence of Their Knowledge and Good Faith

Separate and apart from the fact that the jury must determine whether the government has proven that the conduct at issue here is prohibited by the statutes, it must also find that the government has proven that the defendants possessed the requisite knowledge and intent to be held criminally liable. Although, as the Court has observed, the precise contours of the *mens rea* elements will be set forth in the context of the jury instructions and a Rule 29 motion, it is respectfully submitted that a ruling on the present motion that defendants are permitted to introduce evidence of their knowledge and good faith with respect to the UIGEA, IGBA, and money laundering charges is necessary for the parties' trial preparation and presentation, including opening statements. *See, e.g., United States v. Adair*, 227 F. Supp. 2d 586, 591 (W.D. Va. 2002) (determining in context of motion *in limine* the appropriate definition of "willfully" under the statute without deciding the final language for the jury charge since "the definition of an element of a criminal offense is a crucial issue for the parties in preparing for trial").

### A. UIGEA Requires Proof of Knowledge that Online Poker is Illegal Under Federal or State Law and a Game of Chance

Evidence of the defendants' good faith is relevant to the government's charges that the defendants violated or conspired to violate UIGEA. Specifically, the defendants should be permitted to introduce evidence that (a) the defendants had a good faith belief that such payments were not unlawful under federal or state law and (b) defendants did not knowingly

accept payments in connection with the staking of something of value on the outcome of "a game subject to chance."

UIGEA expressly requires that the defendants knew that the payments that they were accepting were in connection with "unlawful internet gambling." UIGEA states that "[n]o person engaged in the business of betting or wagering may *knowingly* accept, in connection with the participation of another person in unlawful Internet gambling," certain payments. 31 U.S.C. § 5363 (emphasis added). UIGEA then defines "unlawful Internet gambling" to mean "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 31 U.S.C. 5362(10)(A) (emphasis added). UIGEA defines "bet or wager" to mean "the staking or risking by any person of something of value upon the outcome of a contest of others, a sporting event, or a game subject to chance, upon an agreement or understanding that the person or another person will receive something of value in the event of a certain outcome." *Id.* § 5362(1)(A).

The Supreme Court recently made clear that when a statute expressly provides for a "knowing" *mens rea* standard, as UIGEA does, that requirement attaches to each ensuing element of the crime. *See Flores-Figueroa v. United States*, 556 U.S. 646, 129 S. Ct. 1886 (2009). In *Flores-Figueroa*, the defendant was charged under the federal identity theft statute, 18 U.S.C. § 1028(a)(7), which makes it a crime when one "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." At issue was whether "knowingly" applied only to the transfer, possession or use of false identification documents, or whether the statute also required knowledge that the identification actually

belonged to another person. The Supreme Court held that the term "knowingly" applied to both

elements of the statute because it is "natural to read the statute's word 'knowingly' as applying to

all the subsequently listed elements of the crime." *Flores-Figueroa*, 556 U.S. at __, 129 S. Ct. at

1890. In addition, the court observed that "courts ordinarily read a phrase in a criminal statute

that introduces the elements of a crime with the word 'knowingly' as applying that word to each

element." *Id.* at __, 129 S. Ct. at 1891. *See also United States v. Shim*, 584 F.3d 394, 395-96 (2d

Cir. 2009) ("knowingly" applies to elements of statute that make conduct illegal).

  This standard is rigorously applied when statutes criminalize conduct that would

be innocent but for attendant factual circumstances that make the conduct illegal. For example,

in *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 115 S. Ct. 464 (1994), the Supreme

Court construed 18 U.S.C. § 2252, which makes it illegal for any person to "knowingly"

transport or receive across state lines visual depictions of minors engaging in sexually explicit

conduct. At issue was whether the knowledge requirement applied only to the transport and

receipt of sexually explicit material, or whether defendants also had to know that the material

included depictions of minors. The Supreme Court relied on the presumption that "a scienter

requirement should apply to each of the statutory elements that criminalize otherwise innocent

conduct" to hold that "knowingly" applied to both elements. *Id.* at 72, 115 S. Ct. at 469. The

logic behind this rule is plain: Because transporting sexually explicit material is not itself illegal

and becomes illegal only when minors are depicted, it is essential that a defendant have

knowledge of the fact that minors are depicted, *i.e.*, the fact that makes otherwise innocent

conduct illegal.

  This logic was applied by the Second Circuit in *United States v. Bronx Reptiles,

Inc.*, 217 F.3d 82 (2d Cir. 2000). There, the statute made it a misdemeanor for animal importers

"knowingly to cause or permit any wild animal or bird to be transported to the United States . . . under inhumane or unhealthful conditions . . . ." 18 U.S.C. § 42(c). The Second Circuit held that the knowledge requirement applied both to the act of transporting wildlife to the United States and to the existence of inhumane or unhealthful conditions. Because importing animals to the United States is not itself illegal, applying the knowledge requirement only to that element would have lead "to a highly unlikely result: A vast range of remarkably innocuous behavior is rendered criminal." *Bronx Reptiles*, 217 F.3d at 86. Thus, "[t]o avoid this extraordinary and unlikely result, the reader is bound to read the requirement of knowledge to apply to the provision that the animal or bird be transported 'under inhumane or unhealthful conditions' *so that the 'unlawful' act prohibited involves wrongdoing.*" *Id.* (emphasis added).

Applying this principal that the Supreme Court recently clarified in *Flores-Figueroa*, the "knowing" standard used in UIGEA must apply to each ensuing element of the statute. 556 U.S. at ___, 129 S. Ct. at 1894 (where "Congress used the word 'knowingly' followed by a list of offense elements," the government must prove this *mens rea* with respect to every element notwithstanding any practical problems in enforcement). Under UIGEA, because the government must prove that defendants accepted payment "knowing[]" it to be in connection with "unlawful internet gambling," 31 U.S.C. § 5363, the government must establish that the defendants knew the payments were (1) connected to activities that are "unlawful under any Federal or State law," 31 U.S.C. 5362(10)(A), and (2) connected to activities that involved a "bet or wager," which is defined as the staking of something of value upon the outcome of a "game subject to chance." 31 U.S.C. § 5362(1)(A).

### 1.     UIGEA Requires Proof of Knowledge that the Conduct was Illegal Under Federal or State Law

Turning to the first requirement that the government must prove that defendants knew that the bets or wagers were unlawful under applicable federal or state law, the Supreme Court's decision in *Liparota v. United States*, 471 U.S. 419, 105 S. Ct. 2084 (1985), is illustrative. In *Liparota*, the defendant was charged with acquiring food stamps in violation of 7 U.S.C. § 2024(b)(1), which imposes criminal penalties on "whoever *knowingly* uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations." *Id.* at 420, 105 S. Ct. at 2085 (emphasis added). The statute's express inclusion of a knowledge requirement carried through to the requirement that the use of coupons be in a "manner not authorized by [the statute] or the regulations" such that the Court held that: "[W]e believe that § 2024(b)(1) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations." *Id.* at 425, 105 S. Ct. at 2088. Such a *mens rea* showing was required, according to the Court, to avoid the risk of criminalizing a broad range of innocent conduct. *Id.* at 426-27, 105 S. Ct. at 2088-89. Indeed, in *Flores-Figueroa*, where an identity theft offense covered an offender who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person," the government conceded that the offender must "know that he is transferring, possessing, or using . . . *something without lawful authority*." 556 U.S. at ___, 129 S. Ct. at 1889 (emphasis added in part).

Similarly, in prosecutions under drug laws that made it illegal to "knowingly import" drugs into the United States "contrary to law" and "knowing the same to have been imported or brought into the United States contrary to law," under since-repealed 21 U.S.C. § 174, the government had to prove actual knowledge of illegal importation. *See, e.g., United States v. Peeples*, 377 F.2d 205, 211 (2d Cir. 1967) (reversing conviction where jury charge did

not require government to prove knowledge of unlawful importation); *United States v. Papa*, 533 F.2d 815, 825 (2d Cir. 1976) (error, albeit harmless under facts of the case, that judge "omitted to note specifically that knowledge of illegal importation is an element of the offense"); *United States v. Reyes-Padron*, 538 F.2d 33, 35 (2d Cir. 1976) (charge sufficiently apprised jury that "knowledge of illegal importation" was element of substantive crime).

        So too under UIGEA, the government must prove that defendants knowingly accepted certain payments in connection with unlawful Internet gambling, and thus must prove that the defendants knew that the bet or wagers involved were unlawful "under applicable Federal or State law." Because the government must prove that the defendants knew that the conduct was unlawful, it is axiomatic that each defendant may offer a defense that he acted with a good faith belief in the legality of the conduct. *See, e.g., United States v. Martinelli*, 454 F.3d 1300, 1316 (11th Cir. 2006) (holding that where government had to prove that the defendant knew that the funds in a transaction represented the proceeds of some form of unlawful activity, "the jury plainly had to rule out the possibility that [the defendant] actually harbored a good-faith belief in the legitimacy of the business").

        The only court that has addressed the *mens rea* requirements for UIGEA confirms the inclusion of a knowledge requirement and its applicability to the illegality of the underlying conduct. In *United States v. Lyons*, No. 10 CR 10159, 2011 WL 2581954, at *2 (D. Mass. June 28, 2011), the court rejected a due process challenge to UIGEA that was based on UIGEA's incorporation of other laws and regulations precisely because UIGEA included a knowledge requirement stating: "To the extent that there is any ambiguity in the statute by virtue of its reliance on other laws and regulations, that ambiguity is counterbalanced by the statute's requirement that the defendant act 'knowingly.'" At trial, the court charged the jury accordingly,

- 26 -

instructing that under UIGEA, the government was required "to prove beyond a reasonable doubt that the defendant knew that certain activities were prohibited by law," that defendant "had to know it was illegal for . . . acceptance of financial instruments from unlawful Internet gambling, or what I'll call UIGEA," and that, just as with the money laundering charges, "[i]f you find that the defendant acted with a good faith belief that his actions complied with the law, you may consider this in determining whether the defendant knew that certain activities were prohibited by law." *See* Exh. 4 (Transcript of Jury Charge, at 69-70, *United States v. Lyons*, 10 CR 10159 (D. Mass. Dec. 15, 2011) (ECF No. 201)).

### 2. UIGEA Requires Proof of Knowledge that Online Poker is a Game of Chance

The government also must prove that defendants knew that they were accepting payments in connection with the knowing placement, receipt, or transmission by others of a stake of something of value on the outcome of a game subject to chance. *See* 31 U.S.C. § 5363 ("no person . . . may knowingly accept [payment] in connection with . . . unlawful Internet gambling"); 31 U.S.C. § 5362(10) ("unlawful Internet gambling" defined to involve a "bet or wager," which is defined in § 5362(1)(A) to mean the staking of something of value on a "game subject to chance"). UIGEA expressly states that the acceptance of payments must be in connection with the transmission of bets or wagers, defined as staking something of value on the outcome of a "contest of others, a sporting event, or a game subject to chance." 31 U.S.C. § 5362(1)(A). Given that the government does not assert that the conduct at issue in this case – online peer-to-peer poker – is a contest of others or a sporting event, the government must prove that the defendants knew the activities constituted a "game subject to chance." Defendants therefore should be entitled to present evidence that they lacked this requisite knowledge because they understood poker to be a game of skill, not a "game subject to chance." Any lesser

requirement would risk punishing the otherwise lawful conduct of accepting payments, which only becomes illegal when it is performed in connection with statutorily defined "unlawful Internet gambling" that requires a bet or wager on a game subject to chance.

* * *

Because it is the government's burden to prove that defendants possessed the requisite *mens rea* under UIGEA, defendants should be permitted to introduce evidence of their good faith belief and knowledge they were not accepting payments in connection with unlawful Internet gambling because they believed (a) that the bets or wagers were not unlawful under federal or state law, and (b) that online peer-to-peer poker is not a "game subject to chance." *Cf. Liparota*, 471 U.S. at 425, 105 S. Ct. at 2088 (carrying forward knowledge requirement to the element of possession of food stamps "unauthorized by [the] statute or regulations").

### B. IGBA Requires Proof of Knowledge That Online Peer-to-Peer Poker is "Gambling" Under Federal Law and Violates State Law

Although IGBA does not expressly identify the required level of scienter required for conviction, "general intent [] will be presumed to be the default *mens rea* term," *United States v. Griffith*, No. 99CR786(HB), 2000 WL 1253265, at *19 (S.D.N.Y. Sept. 5, 2000), and the government will be required to prove knowledge of the "facts that make the defendant's conduct illegal." *Staples v. United States*, 511 U.S. 600, 622 n.3, 114 S. Ct. 1793, 1805 n.3 (1994) (Ginsburg, J., concurring); *see also Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 102 (2d Cir. 2010) ("[A]bsent clear indication in the language or legislative history of a contrary congressional purpose, *mens rea* is presumed to be an element of any federal crime."). This presumption is rooted in the principle that inherently innocent conduct should not be criminalized based on facts unknown to the defendant.

The Supreme Court's decision in *Staples* is instructive and clearly demonstrates that the government must prove that the defendants knew that they were processing payments for a "gambling" business under federal law. In *Staples*, the defendant was convicted of illegal possession of a machine gun under the National Firearms Act, which imposes registration requirements on statutorily defined "firearms." The act defines the term "firearm" to include a machinegun, and further defines "machinegun" to include any fully automatic weapon. The act "is silent concerning the *mens rea* required for a violation." *Staples* at 605, 114 S. Ct. at 1797. The defendant was found in possession of a semi-automatic machine gun that had been modified to become fully automatic, but the modification was not readily apparent. *Id.* at 603, 114 S. Ct. at 1796. The Supreme Court reversed the conviction and held that "to obtain a conviction, the Government should have been required to prove that petitioner knew of the features of his AR-15 that brought it within the scope of the Act [*i.e.,* that it was fully automatic]." *Id.* at 619, 114 S. Ct. at 1804. The key component of the Supreme Court's analysis was that although the statute was silent as to scienter, a *mens rea* presumption applied and required knowledge of the facts that made the otherwise legal possession of a semi-automatic gun illegal under a statutory definition of "firearm" that included only automatic weapons. *See id.* at 618, 114 S. Ct. at 1804 ("[D]ispensing with *mens rea* would require the defendant to have knowledge only of traditionally lawful conduct"). The Court contrasted public welfare offenses that may dispense with a knowledge requirement such as those involving the possession of unregistered hand grenades or selling certain narcotics, with those that impose a knowledge requirement such as those involving the possession of food stamps at issue in *Liparota* or possessing a gun given the "long tradition of widespread lawful gun ownership by private individuals in this country." *Id.* at 609-10, 114 S. Ct. at 1799-1800. Under this principle, it is not enough that the defendant

- 29 -

knowingly possessed a gun that turned out to be automatic; the defendant must possess a gun that he *knows* to be automatic. A contrary "construction of the statute potentially would impose criminal sanctions on a class of persons whose mental state – ignorance of the characteristics of weapons in their possession – makes their actions entirely innocent." *Id.* at 614-15, 114 S. Ct. at 1802. *See also Rogers v. United States*, 522 U.S. 252, 258, 118 S. Ct. 673, 677 (1998) (under *Staples*, where statute prohibits use of silencers on firearms, government must prove that defendant knew item was a silencer).

Similarly, under IGBA, "[t]o establish the required *mens rea*, the government must demonstrate that a defendant knew that his or her act was one of participation in a gambling business covered by the statute. Any other rule would inappropriately criminalize apparently lawful conduct because § 1955 proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor." *United States v. O'Brien*, 131 F.3d 1428, 1430 (10th Cir. 1997) (citation and internal quotation marks omitted). *See also United States v. Conley*, 37 F.3d 970, 977 (3d Cir. 1994) (violation of IGBA requires proof that "five or more persons . . . *knowingly* and deliberately conducted, financed, managed, supervised, directed or owned all or part of [a] gambling business" (emphasis added)).

The United States Attorney in this District confirmed this statutory construction during the plea allocution in *United States v. Lawrence*, 07 CR 597 (S.D.N.Y. 2007) (Transcript of Plea Colloquy, Exh. 2 at 16), at which the government explained that IGBA "has four elements. The first is that a violator *knowingly* conducts an illegal gambling business." (emphasis added). Knowledge of the facts that make the activity illegal is required to avoid criminalizing the vast numbers of innocent actors who unknowingly provide lawful services such

as accounting, maintenance, or even food supply for businesses that turn out to be "gambling" businesses.

In this case, defendants' conduct of processing payments is not inherently illegal. It is conduct that becomes criminal only if the government proves beyond a reasonable doubt that defendants knew that the payments they processed were in connection with "gambling" as that term is defined in IGBA. Just as in *Staples*, where the critical inquiry was not whether the petitioner possessed a gun that turned out to be an illegal "firearm" under the statute, but whether he *knew* his gun to have the characteristics that made it a "firearm" under the statute, here the inquiry is not whether defendants knew they were processing payments in connection with online poker, which turned out to be illegal gambling under the statute, but whether they *knew* online poker to have the characteristics that make it "gambling" under the statute. It is the government's burden to prove that defendants knew that peer-to-peer online poker had the characteristics that render it "gambling" under IGBA and defendants concomitantly should be permitted to introduce evidence that they did not have such knowledge.

Separate and apart from the foregoing, defendants submit that IGBA also requires knowledge of illegality under state law. While we recognize that other courts interpreting IGBA have held otherwise, *see, e.g., United States v. Hawes*, 529 F.2d 472, 481 (5th Cir. 1976), *United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir. 1999), those cases are inconsistent with Supreme Court precedent such as *Staples* and *Liparota* and the Second Circuit has yet to rule on this question. The focus of *Staples* and *Liparota* was to ensure that defendants who were engaged in behavior that was otherwise lawful, *i.e.*, the possession of a gun or food stamps, could not be found criminally liable without knowledge of the facts that made their conduct unlawful. The earlier IGBA decisions rested their analysis largely on a finding that IGBA is a general intent

- 31 -

statute, but such a finding does not end the inquiry. Even general intent statutes require

knowledge of all of the factual elements that make the conduct illegal. *See, e.g., United States v.*

*Flores-Villar*, 536 F.3d 990, 999 (9th Cir. 2008), *aff'd*, 131 S. Ct. 2312 (2011) (per curiam) ("[A]

general intent *mens rea* requires a defendant to know the facts that make what he does illegal.").

Just as in *Liparota* where the Court held that the defendant must have knowledge of the fact that

the food stamps he possessed were "unauthorized by statute or regulations," 471 U.S. at 425, 105

S. Ct. at 2088 (*citing* 7 U.S.C. § 2024(b)(1)), under IGBA's knowledge requirement, defendants

must know that their otherwise lawful payment processing activity was in connection with a

"gambling business which . . . is a violation of the law of a State of political subdivision in

which it is conducted." 18 U.S.C. § 1955(b)(1)(i). Therefore, the government must prove that

defendants knew that online peer-to-peer poker, for which they were processing payments, was

illegal under state law and defendants should be permitted to introduce evidence that they did not

have such knowledge.[5]

### C.      Evidence of Defendants' Good Faith is Relevant to the Government's Charge of Conspiracy to Launder Money

Defendants are also charged with conspiring with others to launder money by (1)

engaging in monetary transactions between the United States and foreign jurisdictions that were

intended to promote the operation of an illegal gambling business under 18 U.S.C.

§ 1956(a)(2)(A), and (2) willfully and knowingly engaging in monetary transactions between the

United States and foreign jurisdictions involving more than $10,000 that was derived from

---

[5] To the extent that UIGEA and IGBA, neither of which specifically identify any form of poker as a prohibited gambling activity, are ambiguous about whether they cover online peer-to-peer poker, the Supreme Court's "rule of lenity" requires that any ambiguities be construed strictly in favor of the defendants. *See, e.g., United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225 (1997) ("[T]he canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by [] resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered."). This rule applies equally to any ambiguity about the necessary mental states for conviction under UIGEA or IGBA. *See Liparota*, 471 U.S. at 427, 105 S. Ct. at 2089 ("[R]equiring *mens rea* is in keeping with our longstanding recognition of the principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (citation and internal quotation marks omitted)).

specified unlawful activity, to wit, an illegal gambling business in contravention of 18 U.S.C.
§ 1957(a). *See* Indictment, Exh. 1 ¶¶ 53-54. With respect to both of these charges, defendants
should be permitted to introduce evidence of their good faith belief that they were not engaged in
monetary transactions related to unlawful activity.

      Money laundering requires proof that defendants engaged in monetary
transactions that they knew were either in promotion of or derived from unlawful activity. *See*
*United States v. Ness*, 565 F.3d 73, 78 (2d Cir. 2009) ("To prove a violation of § 1957(a), the
government must present evidence that the defendant knowingly engaged or attempted to engage
in a monetary transaction in unlawful funds."); *United States v. Quintero*, 165 F.3d 831, 838
(11th Cir. 1999) ("The district court also instructed the jury that in order to prove a violation of
§ 1956(a)(2)(A), the government had to present evidence showing that . . . [defendant] willfully
conducted the financial transaction with the intent to promote the carrying on of the specified
unlawful activity."); *United States v. Rivera*, No. 89 CR 00031, 1992 WL 135231, at *5
(E.D.N.Y. June 3, 1992), *aff'd sub nom. United States v. Restrepo*, 990 F.2d 622 (2d Cir. 1993)
(guilty plea under § 1956(a)(2)(A) properly supported by admission that defendant "knew that
the money was from an illegal activity"); *United States v. Nicolo*, 597 F. Supp. 2d 342, 349
(W.D.N.Y. 2009) (under § 1957(a), "[a] defendant must know . . . that the subject of the
transaction is criminally derived property").

      Defendants therefore should be permitted to introduce evidence that they did not
believe that their monetary transactions were associated with unlawful activity because they did
not know that they or the entities for which they were processing payments were violating the
law by operating an online peer-to-peer poker business.

## Conclusion

For the foregoing reasons, we respectfully request that, with respect to the UIGEA, IGBA, and money laundering charges, the Court permit the defendants to present evidence to the jury of the factual characteristics of online peer-to-peer poker, determine the appropriate standard under which the jury will evaluate that evidence, and permit evidence of defendants' knowledge and good faith.

Dated: February 22, 2012
New York, New York

KRAMER LEVIN NAFTALIS &
FRANKEL LLP


By:_____/s/_____
        Barry H. Berke
        Dani R. James
        Jennifer L. Rochon

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
bberke@kramerlevin.com

BANCROFT PLLC

By: Paul D. Clement

1919 "M" Street, N.W., Suite 470
Washington, DC 20036
(202) 234-0090


*Attorneys for Defendant Chad Elie*


HAFETZ NECHELES & ROCCO


By:_____/s/_____
        Frederick P. Hafetz
        Kathleen E. Cassidy

500 Fifth Avenue
New York, New York 10110
(212) 997-7595
fhafetz@hnrlawoffices.com

CLYDE SNOW & SESSIONS

By: Neil A. Kaplan
       Anneli R. Smith

201 South Main Street, Suite: 1300
Salt Lake City, UT 84111
(801) 322-2516


*Attorneys for Defendant John Campos*