UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                :

UNITED STATES OF AMERICA,      :
                                :

          v.                        : No. 10 CR. 336 (LAK)
                                : ECF Case

CHAD ELIE and JOHN CAMPOS,     :
                                :

                 Defendants.    :
———————————————————————— x

## DEFENDANTS' REPLY TO THE GOVERNMENT'S MOTION *IN LIMINE* REGARDING THE RELEVANCE OF SKILL AND REQUISITE *MENS REA*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Barry H. Berke
Dani R. James
Jennifer L. Rochon
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

HAFETZ NECHELES & ROCCO
Frederick P. Hafetz
Kathleen E. Cassidy
500 Fifth Avenue, 29th Floor
New York, New York 10110
(212) 997-7595

BANCROFT PLLC
Paul D. Clement
D. Zachary Hudson
1919 "M" Street, N.W., Suite 470
Washington, DC 20036
(202) 234-0090

CLYDE SNOW & SESSIONS
Neil A. Kaplan
Anneli R. Smith
201 South Main Street, Suite: 1300
Salt Lake City, UT 84111
(801) 322-2516

*Attorneys for Defendant Chad Elie*

*Attorneys for Defendant John Campos*

# TABLE OF CONTENTS

Background ............................................................................................................................. 1

Argument .............................................................................................................................. 2

    I.     Evidence Concerning the Level of Skill Involved in Online Poker is
          Relevant ..................................................................................................... 2

    II.    Evidence of Defendants' Good Faith and Lack of Knowledge Is Relevant ........... 7

## TABLE OF AUTHORITIES

Page(s)

CASES

*Apprendi v. New Jersey,*
   530 U.S. 466, 120 S. Ct. 2348 (2000)...................................................................................4, 7

*Bryan v. United States,*
   524 U.S. 184, 118 S. Ct. 1939 (1998)..................................................................................8, 9

*Cheek v. United States,*
   498 U.S. 192, 111 S. Ct. 604 (1991)...............................................................................10 n.15

*Flores-Figueroa v. United States,*
   556 U.S. 646, 129 S. Ct. 1886 (2009)......................................................................................7

*Khulmani v. Barclay National Bank Ltd.,*
   504 F.3d 254 (2d Cir. 2007)...........................................................................................4 n.7

*Liparota v. United States,*
   471 U.S. 419, 105 S. Ct. 2084 (1985)..................................................................................8, 9

*Mead Corp. v. Tilley,*
   490 U.S. 714, 109 S. Ct. 2156 (1989)......................................................................................6

*Medley v. Runnels,*
   506 F.3d 857 (9th Cir. 2007) ...................................................................................................5

*Molloy v. Metropolitan Transportation Authority,*
   94 F.3d 808 (2d Cir. 1996)............................................................................................3 n.6

*SEC v. M&A West Inc.,*
   538 F.3d 1043 (9th Cir. 2008) .......................................................................................10 n.14

*Staples v. United States,*
   511 U.S. 600, 114 S. Ct. 1793 (1994)......................................................................................7

*United States v. Ables,*
   167 F.3d 1021 (6th Cir. 1999) .................................................................................................9

*United States v. Ansaldi,*
   372 F.3d 118 (2d Cir. 2004)...........................................................................................8 n.12

*United States v. Banki,*
   __ F.3d __, 2012 WL 539962 (2d Cir. Feb. 22, 2012) .........................................................5

*United States v. Campbell,*
   167 F.3d 94 (2d Cir. 1999)............................................................................................4

*United States v. Cohen,*
   260 F.3d 68 (2d Cir. 2001)...............................................................................8, 9 n.13

*United States v. DeFries,*
   129 F.3d 1293 (D.C. Cir. 1997)....................................................................................4

*United States v. Elie,*
   2012 WL 383403 (S.D.N.Y. Feb. 7, 2012).............................................................3 n.5

*United States v. Gaudin,*
   515 U.S. 506, 115 S. Ct. 2310 (1995)...........................................................................4

*United States v. Godin,*
   534 F.3d 51 (1st Cir. 2008)............................................................................................7

*United States v. Golitschek,*
   808 F.2d 195 (2d Cir. 1986)..........................................................................................8

*United States v. Hill,*
   167 F.3d 1055 (6th Cir. 1999) ................................................................................5 n.9

*United States v. Hohn,*
   8 F.3d 1301 (8th Cir. 1993) ..........................................................................................5

*United States v. Ingredient Technology Corp.,*
   698 F.2d 88 (2d Cir. 1983)......................................................................................8 n.12

*United States v. Mead Corp.,*
   533 U.S. 218, 121 S. Ct. 2164 (2001).....................................................................6 n.10

*United States v. Moncini,*
   882 F.2d 401 (9th Cir. 1989) ........................................................................................8

*United States v. Needham,*
   604 F.3d 673 (2d Cir. 2010)..........................................................................................4

*United States v. Regan,*
   937 F.2d 823 (2d Cir. 1991)....................................................................................10 n.15

*United States v. Stein,*
   2007 WL 3009650 (S.D.N.Y. Oct. 15, 2007) ............................................................10

*Webster v. Fall,*
   266 U.S. 507, 45 S. Ct. 148 (1924)........................................................................4 n.7

**STATUTES**

7 U.S.C. § 2024 ............................................................................................................................... 8

18 U.S.C. § 1955 ...................................................................................................................... 3, 4 n.7

18 U.S.C. § 1956 ............................................................................................................................... 9

18 U.S.C. § 1960 ............................................................................................................................... 5

31 U.S.C. § 5362 ....................................................................................................................... 6 n.10

**OTHER AUTHORITIES**

73 Fed. Reg. 69,382 (Nov. 18, 2008) ..................................................................................... 6 n.10

H.R. 4777, 109th Cong. (Feb. 16, 2006) ............................................................................ 6, 6 n.10

H.R. 4411, 109th Cong. (Nov. 18, 2005) ................................................................................ 6 n.10

Model Rules of Professional Conduct ..................................................................................... 2, 2 n.3

## Background

As part of a misguided attempt to avoid its burden to prove every element of each charged offense by seeking to substitute its views of the facts for that of the jury, the government includes a lengthy recitation of its allegations, many of which will be contested at trial or are wholly irrelevant to the charges in this case. All of those arguments go to the weight to be afforded such evidence at trial, not the availability of defenses based on that evidence.

It bears noting, however, that the government's purported summary of what the legal opinion evidence would be at trial leaves out many significant facts. For example, the government neglected to mention that the legal opinions received by Elie and Campos included a detailed opinion addressed to SunFirst from Ashcroft Hanaway, the law firm of former United States Attorney General John Ashcroft and Catherine Hanaway, the former United States Attorney for the Eastern District of Missouri who had testified before Congress regarding UIGEA and had initiated one of the leading prosecutions on Internet gambling. In addition, both Elie and Campos received opinions addressing the lawfulness of the transactions from other law firms and experts in the gaming area, including Marc Zwillinger of Sonnenschein Nath & Rosenthal LLP, a former federal prosecutor experienced in Internet and online gaming law; Ian Imrich, a specialist in gaming law; and Akin Gump.[1] *See* Opinions attached as Exh. A to Gov't Br.[2]

Although the government tries to diminish the significance of these legal opinions by

---

[1] A March 2010 memorandum from Akin Gump indicated that the Department of Justice considers "[t]ransfers of funds related to on-line poker that are conducted accurately and transparently . . . and pursuant to any license required for transferring money" to be lawful. While the government contends that the lawyer from Akin Gump issued a revised opinion in mid-July 2010 "walking back" his earlier opinion, Gov't Br. 10, neither Elie nor Campos ever saw or heard about the revised memorandum.

[2] While the government correctly notes that Mr. Elie retained William Cowden, a former Department of Justice attorney, following the seizures of his bank accounts, the government neglected to mention that after Mr. Elie participated in two proffer sessions in an effort to recover the seized funds and receive a non-prosecution agreement, Mr. Cowden provided him with a written legal opinion that Mr. Elie did not need to register as a money transmitter to remit money to merchants located abroad. The opinion by Mr. Cowden noted that Mr. Elie had been separately advised concerning the legality of Mr. Elie's company processing funds for its specific merchants, which included the online poker companies. *See* Exh. A to Feb. 29, 2012 Decl. of Barry H. Berke ("Berke Feb. 29 Decl.") at 6.

deriding them as nothing more than "self-serving" opinions for the poker companies, Gov't Br.
1, the opinions were not rendered by the poker companies. They were authored by respected
lawyers, including former officials of the Department of Justice, in accordance with professional
standards which require lawyers to exercise their independent judgment.[3] It is of course quite
common for lawyers to provide legal opinions to third parties, such as the opinions that were
shared with the banks and other third parties here considering whether to process poker
transactions. *See* Model Rules of Prof'l Conduct R. 2.3 (authorizing lawyers to provide opinions
to non-clients). There is no basis for the government to suggest that these lawyers did anything
but comport with their ethical obligations.[4]

      In any event, the government's complaints regarding the source and substance of the
opinions have no bearing on the present motion. The question before the Court is whether the
defendants should be permitted to challenge the government's proof as to all of the elements of
UIGEA, IGBA, and money laundering, by presenting evidence regarding the characteristics of
poker, their lack of knowledge of the factual elements, and their good faith belief that the
conduct was lawful. It is respectfully submitted that it is for the jury to decide in light of all the
facts and circumstances what weight should be given to such evidence.

**Argument**

**I.      Evidence Concerning the Level of Skill Involved in Online Poker is Relevant**

      The government contends that evidence of the role of skill and chance in online peer-to-

---

[3] *See, e.g.*, Model Rules of Prof'l Conduct R. 1.2 (lawyer may not counsel or assist in criminal or fraudulent conduct); *id.* R. 2.1 (lawyer must exercise independent professional judgment and provide candid advice).

[4] Not only is it appropriate for the defendants to have received the legal memoranda prepared by counsel for the poker companies, but the government agency tasked with issuing rules for the implementation of UIGEA affirmatively recommends that banks and processing businesses obtain legal opinions from counsel for their customers. *See* Exh. B to Berke Feb. 29 Decl. at 3, Board of Governors of the Federal Reserve System, *Prohibition on Funding of Unlawful Internet Gambling—A Small Entity Compliance Guide* (businesses involved with processing payments for commercial customers without Internet gambling licenses "should obtain from the commercial customer a reasoned legal opinion from the commercial customer's legal counsel that demonstrates that the commercial customer's Internet gambling business does not involve transactions that are prohibited by UIGEA").

peer poker is "irrelevant" because poker constitutes gambling as a matter of law under UIGEA, IGBA, and the underlying state laws. In so arguing, the government ignores the federal statutory elements in UIGEA and IGBA that the conduct at issue must constitute a "game subject to chance" and "gambling," respectively, and instead claims that state law is determinative. Gov't Br. 10-12.

With respect to UIGEA, before addressing the legality of the conduct under state law, the jury must first find that poker is a "game subject to chance." Defs.' Moving Br. 6-10. The government admits as much in stating that UIGEA "applies to any games that are 'subject to chance,' . . . *and* that are prohibited under the law of the state in which the 'bet or wager is initiated, received, or otherwise made." Gov't Br. 12. The government nonetheless argues that the Court should usurp the role of the jury by determining as a matter of law that poker satisfies the statutory requirement that it be "subject to chance."

So too under IGBA, the government must prove, and the jury must find, that the alleged conduct is "gambling" under federal law before evaluating whether it is unlawful under state law. *See* 18 U.S.C. § 1955(b)(1); Defs.' Moving Br. 11-14.[5] In order to give meaning to each of the statute's provisions, subsection (b)(2) must be understood as defining the types of activities that constitute gambling under the statute, which, if carried on by a "business" operating in the manner set forth in subsection (b)(1)(i)-(iii), are rendered unlawful.[6] Defs.' Moving Br. 14-17. Even when a federal statute defers to state law for determination of the illegality of certain conduct, federal definitions of the operative language in federal statutes continue to apply. *See,*

---

[5] The government takes the Court's statement that "the focus of IGBA is upon the conduct of gambling businesses in the United States in violation of the laws of the states and political subdivisions in which they are conducted" completely out of context. Gov't Br. 11. The Court was not considering whether a state conclusion that poker is gambling is determinative under IGBA, but instead was addressing the defendants' extraterritoriality arguments under *Morrison. See United States v. Elie*, 2012 WL 383403, at *3 (S.D.N.Y. Feb. 7, 2012).

[6] That IGBA uses the phrase "includes, but is not limited to" does not alter this analysis. *See Molloy v. Metro. Transp. Auth.*, 94 F.3d 808, 812 (2d Cir. 1996) (with respect to statute defining "alteration" as "a change to an existing facility, including, but not limited to" seven enumerated examples, court held that only changes "similar to the specific items in the list" were captured by the statute).

e.g., *United States v. Campbell*, 167 F.3d 94, 97 (2d Cir. 1999) (holding that when evaluating

enhanced penalties for reentry into the United States due to earlier convictions of a felony under

state law, "the matter of [w]hether one has been 'convicted' within the language of [federal]

statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate

offense and its punishment are defined by the law of the State").[7]

The government's argument that the Court, not the jury, should determine whether poker is

a "game subject to chance" or "gambling" is contrary to the Supreme Court's holdings in *United*

*States v. Gaudin*, 515 U.S. 506, 512-13, 115 S. Ct. 2310, 2314-15 (1995), *Apprendi v. New Jersey*,

530 U.S. 466, 484-85, 120 S. Ct. 2348, 2359 (2000), and their progeny, that every element of a

criminal statute requires separate determination by the jury.  Even where the government argues

that the evidence as to an element is strong, it must still be determined by the jury. *See United*

*States v. Needham*, 604 F.3d 673, 679 (2d Cir. 2010) (instruction that drug robbery affected

interstate commerce as a matter of law in Hobbs Act case "improperly supplanted the required jury

finding"); *United States v. DeFries*, 129 F.3d 1293, 1311-12 (D.C. Cir. 1997) (reversing RICO

conviction where court determined that "enterprise" existed as a matter of law because, "[a]s

*Gaudin* makes clear, a court must give the jury the opportunity to evaluate whether the government

has proven its case beyond a reasonable doubt for every element of the crime charged" despite the

Court's assessment of the strength of the evidence presented).[8]

---

[7] Limiting the reach of IGBA to federally-defined gambling businesses is necessary given that 18 U.S.C.
§ 1955(b)(1)(i) is not, on its face, limited to state *gambling* laws. State illegality is also not determinative because it
is uncontested that even if a state decided to criminalize chess or stock trading, such activities would still remain
outside IGBA's reach.  That other IGBA cases have not so held has no bearing because the issue has never been
presented to a court. *Webster v. Fall*, 266 U.S. 507, 511, 45 S. Ct. 148, 149 (1924) ("Questions which merely lurk
in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so
decided as to constitute precedents."); *Khulmani v. Barclay Nat'l Bank*, 504 F.3d 254, 321 (2d Cir. 2007) (same).

[8] The government's extensive recitation of various state gambling laws and jurisprudence is beside the point given
that the disputed evidence is relevant to the separate question of whether online poker falls under the federal
threshold determinations in UIGEA and IGBA. While defendants disagree with the government's characterization
of the various state laws, the elements of those state law violations can be addressed in the jury instructions.

In fact, the Second Circuit's opinion just last week in *United States v. Banki*, __ F.3d __, 2012 WL 539962 (2d Cir. Feb. 22, 2012) confirms that whether online poker meets a statutory definition is not a question of law for the Court, but rather requires the jury to apply the facts to the legal standard set forth in the statute. In *Banki*, the defendant engaged in money transfers with family members in Iran through an intermediary called a "hawala." The government charged the defendant under 18 U.S.C. § 1960, which proscribes operation of an unlicensed "money transmitting business." The court instructed the jury that a "hawala is a money transmitting business." The Second Circuit vacated the conviction because by so instructing the jury, the "district court arguably was instructing the jury that if it found that Banki operated a 'hawala,' then he necessarily operated a money transmitting business, thereby taking the latter issue away from the jury." *Id.* at *13. This is precisely what the government is asking the Court to do here: take away from the jury the issue of whether online poker is "a game subject to chance" or "gambling." *See also Medley v. Runnels*, 506 F.3d 857, 864 (9th Cir. 2007) (vacating sentence enhancement based on discharge of a "firearm" during a felony because court impermissibly instructed jury that a flare gun is a "firearm" under state law rather than requiring jury to make that determination); *United States v. Hohn*, 8 F.3d 1301, 1307 (8th Cir. 1993) (affirming that in prosecution under statute prohibiting sale of drugs near a school, "[t]he final determination as to whether Central Park met the statutory definition of school was . . . a question of fact appropriate for the jury"); *see also* Defs.' Moving Br. 6-10, 17-21.[9]

---

[9] Far from supporting the government's IGBA argument, the central holding of *United States v. Hill*, 167 F.3d 1055, 1059-60, 1066-67 (6th Cir. 1999) (cited at Gov't Br. 16) reaffirms the *defendants'* contention that to prove a money laundering charge, the government must prove that defendants knew that the laundered funds came from a "criminal activity." The court rejected defendant's proffered evidence that he did not know that the laundered funds came from felonious, as opposed to misdemeanor, activities, because only knowledge of criminal activity was required. *Id.* at 1069. Moreover, opinions that the machines were not "gambling devices *per se*" were irrelevant because the defendant placed machines in places of business *intending* they be used for gambling. *Id.* After already holding the evidence inadmissible, the court's comments that it is within the sole province of the court to instruct the jury as to Tennessee's gambling laws are uncontroverted and inconsequential. *Id.*

Lastly, the government's argument that Congress intended UIGEA to reach poker is unsupported by the record and, in any event, is only relevant to the legal standard by which the jury will determine whether the government has proven that online poker is a "game subject to chance." The Court should reject the government's suggestion that Congress intended the test under UIGEA to be less than predominance in order to cover poker as a matter of law because it included the word "predominantly" in House Resolution 4777, an earlier unenacted internet gambling bill (whose purpose – unlike UIGEA – was to amend the Wire Act), and excluded that word in its later enactment of UIGEA. Gov't Br. 11-12. In fact, there was no discussion in committee reports or the statements of sponsors regarding the reason, if any, that the word "predominantly" was not included in UIGEA or its applicability to poker, and the government's bare speculation on this point is immaterial. *See Mead Corp. v. Tilley*, 490 U.S. 714, 723, 109 S. Ct. 2156, 2162 (1989) (holding that "[w]e do not attach decisive significance to the unexplained disappearance of one word from an unenacted bill because 'mute intermediate legislative maneuvers' are not reliable indicators of congressional intent") (citation omitted).[10]

---

[10] Incidental statements by the Federal Reserve and Department of Treasury suggesting that there may be some significance to the inclusion of the word "predominantly" in 31 U.S.C. § 5362(1)(B), are not the sort of lawmaking authority that entitle their views to deference since the agencies affirmatively declined to adopt a definition of a "game subject to chance" by rule or regulation. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 2171 (2001). *See also* §5362(1)(C), which does not diminish or alter the scope of §5362(1)(A) with respect to sports betting, just as the word "predominantly" in §5362(1)(B) does not diminish or alter the term "game subject to chance" in §5362(1)(A). Indeed, even the agencies recognized that there will be some games that do not qualify as "games subject to chance" and noted that "the characterization of [each activity] depends on the specific facts and circumstances." Prohibition on Funding of Unlawful Internet Gambling, 73 Fed. Reg. 69,382, 69,386, 2008 WL 4915226 (Nov. 18, 2008). Contrary to the government's position, Gov't Br. 11-12, the record also shows that the April 5, 2006 statements of Department of Justice representative Bruce Ohr did not have any influence on Congress. Ohr testified about a wholly separate bill (an amendment to the Wire Act), which included the word predominantly both before and after his comments. *Compare* H.R. 4777, 109th Cong. § 1081(6)(A) (Feb. 16, 2006), *with* H.R. 4777, 109th Cong. § 1081(6)(A) (as reported by Comm. on the Judiciary, May 25, 2006). As for UIGEA, neither the initial bill prior to Ohr's testimony nor its final enactment included the word predominantly. *Compare* H.R. 4411, 109th Cong. § 5362(1)(A) (Nov. 18, 2005), *with* 18 U.S.C. § 5362(1)(A) (enacted Oct. 13, 2006). Finally, the government's arguments about the 1999 National Gambling Impact Study are similarly misplaced. *See* Elie's Mem. of Law in Supp. of Mot. to Dismiss the UIGEA Counts at 14-15.

## II.     Evidence of Defendants' Good Faith and Lack of Knowledge Is Relevant

The government's assertion that UIGEA and IGBA do not require proof of "willfulness"

is inconsequential. The statutes clearly require proof of "knowing" conduct, a point that even the

government concedes, admitting that it must prove "defendant's knowledge of the facts

comprising the offense." Gov't Br. 18; *see also Flores-Figueroa v. United States*, 556 U.S. 646,

129 S. Ct. 1886, 1894 (2009) (holding that knowing *mens rea* standard applies to each element

of the offense); *United States v. Godin*, 534 F.3d 51, 63 (1st Cir. 2008) (Lynch, J., concurring)

(relying on *Apprendi* in noting that the jury needed to find "beyond a reasonable doubt that all of

the statutory requirements have been met," including the requisite knowledge). That the charged

conduct is "a game subject to chance" and "gambling" are "facts comprising the offenses"

expressly set forth in UIGEA and IGBA, respectively. Therefore, the defendants are entitled to

challenge the government's proof that defendants knew that online poker was a game subject to

chance or had the "characteristics," *Staples v. United States*, 511 U.S. 600, 614-15, 114 S. Ct.

1793, 1802 (1994), that make it "gambling" under IGBA.

Additionally, as noted in our opening brief, proof of the "facts constituting the offense"

under UIGEA requires not only knowledge that the conduct at issue constituted a game of

chance, but also knowledge that the conduct constituted unlawful internet gambling.

Defendants' argument that the government must prove the latter element does not change the

analysis, or convert a mistake of fact defense into a mistake of law defense. Here, UIGEA

expressly provides that defendants must have knowledge of unlawful internet gambling and, as

the *Lyons* court recognized in its UIGEA jury instruction, defendants must "know that certain

activities were prohibited by law" and the jury may consider whether "defendant acted with a

good faith belief that his actions complied with the law[.]" *See* Feb. 21, 2012 Decl. of Barry H.

- 7 -

Berke Ex. 4 at 69-70, Transcript of Jury Charge, *United States v. Lyons*, 10 CR 10159 (D. Mass.

Dec. 15, 2011).[11]  Where a statute includes knowledge of illegality as an element of the offense –

as UIGEA does – knowledge of illegality becomes a fact that must be proved beyond a

reasonable doubt. *See, e.g., Liparota v. United States*, 471 U.S. 419, 425, 105 S. Ct. 2084, 2088

(1985) ("[W]e believe that § 2024(b)(1) requires a showing that the defendant knew his conduct

to be unauthorized by statute or regulations."); *United States v. Golitschek*, 808 F.2d 195, 203

(2d Cir. 1986) (reversing conviction where court failed to charge jury that defendant must know

that he acted unlawfully because "when the law makes knowledge of some requirement an

element of the offense, it is totally incorrect to say that ignorance of such law is no excuse or that

everyone is presumed to know such law"); *United States v. Moncini*, 882 F.2d 401, 404 (9th Cir.

1989) (where statutes "incorporate knowledge of illegality as an element of the offense. . . the

illegality is a fact of which the defendant must be aware to have the necessary *mens rea*"); *see

also* Defs.' Br. 25-27.[12]

     The Court should reject the government's reliance on *United States v. Cohen*, 260 F.3d

68 (2d Cir. 2001) for the proposition that the government is not required to prove that defendants

knew that the conduct violated the law.  Gov't Br. 20-21.  *Cohen* concerned a violation of the

Wire Act which, unlike UIGEA, does not include an express statutory provision regarding

knowledge of the illegality of the underlying conduct.  This distinction is clearly recognized by

the *Cohen* court's reliance on *Bryan v. United States*, 524 U.S. 184, 118 S. Ct. 1939 (1998).  In

---

[11] IGBA also requires the government to prove that defendant knew the conduct violated state law.  Defs.' Br. 31-32.
[12] The cases relied upon by the government for its assertion that good faith ignorance of the law is no defense, such as *United States v. Ansaldi*, 372 F.3d 118, 128 (2d Cir. 2004), are inapposite because they either involve statutes that do not include knowledge of illegality as an element, or where knowledge of illegality was not in doubt.  Gov't Br. 17-18.  *United States v. Ingredient Technology Corp.*, 698 F.2d 88 (2d Cir. 1983), cited by the government at pages 15 and 24, also does not support the government's efforts to preclude the evidence proffered here because the court simply held that after-the-fact expert evidence regarding whether the defendants' conduct was proscribed by law was irrelevant to the question of whether at the time the conduct occurred, defendants were acting in good faith or knew that they were committing a wrongful act. *Id.* at 97.

*Bryan*, the Supreme Court held that a knowing provision requires proof of knowledge of the facts that constitute the offense and not knowledge of the law "*unless the text of the statute dictates a different result*" and pointed to *Liparota* where the term "knowingly" "referred to knowledge of the law as well as knowledge of the relevant facts" as an example of that latter circumstance. *Id.* at 193, 193 n.15, 118 S. Ct. at 1946, 1946 n.15 (emphasis added).[13]

With respect to the money laundering charge, the government does not seriously contest that defendants are entitled to present evidence of their good faith and lack of knowledge that they were engaged in monetary transactions in promotion of, or derived from, unlawful activity. The government does not present any argument or even a single case establishing that such evidence should be excluded and instead buries its sparse and inaccurate remarks on the subject in a footnote. Gov't Br. 21 n.9. Specifically, the government misstates that 18 U.S.C. § 1956 requires an "intent to promote the carrying on of *unspecified* activity" when the statute states that Section 1956 requires proof of intent to "promote the carrying on of specified *unlawful* activity." 18 U.S.C. § 1956 (emphasis added). Moreover, *United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir. 1999) – the only case cited by the government – does not even address the point and instead holds that a challenged, and likely erroneous, money laundering jury charge was superfluous in light of a stipulation between the parties.

The government's arguments regarding an advice of counsel defense are irrelevant because defendants are not asserting an advice of counsel defense. Rather, defendants seek to introduce evidence – including the legal opinions received by them – to show that they did not

---

[13] *Cohen's* discussion regarding defendant's claim that he lacked the requisite *mens rea* because he did not "knowingly transmit bets" given the creative "account-wagering" structure he employed are likewise inapposite. 260 F.3d at 76. There was no question in *Cohen* that defendant knew his conduct was in connection with sports betting and that his business solicited and accepted bets from its customers, activities expressly proscribed by the Wire Act. Here, neither UIGEA nor IGBA specifically identify poker as a prohibited gambling activity. In addition, the *Cohen* court found that regardless of defendant's knowledge about his transmission of bets, he "admitt[ed] that he knowingly transmitted information assisting in the placing of bets," a violation of the statute "[i]n any event." *Id.*

have knowledge of the essential elements of the offenses, namely that poker was a "game subject to chance," and "unlawful Internet gambling" under UIGEA, or constituted "gambling" under IGBA. While the government presents arguments concerning the strength of such evidence, these arguments go to weight and not admissibility. The defendants should be able to present all of the facts that informed their knowledge and influenced their state of mind, even if that evidence takes the form of legal opinions.[14]

The government's final argument, that the jury will be unable to adhere to the Court's legal instructions if it is presented with the legal memoranda, Gov't Br. 24, is purely speculative and does not come close to "substantially outweighing" the highly probative value of the evidence to defendants' knowledge and state of mind, particularly if the Court gives an appropriate limiting instruction. Just as in the KPMG matter where this Court allowed the government to introduce documents that contained legal conclusions over defendants' objection, there is "no reason to think that the jury could not follow limiting instructions with respect to any statement in documents that may be admitted or that it would not scrupulously adhere to the Court's instructions at the close of the evidence." *See United States v. Stein*, 2007 WL 3009650, at *3 (S.D.N.Y. Oct. 15, 2007).[15]

---

[14] This Court in the KPMG case when instructing the jury that it may consider legal opinion letters that the government alleged the defendants knew were false indicated that even though they are "not evidence as to what the law is," the jury may still consider them as evidence on what "the author and anybody who read the letter actually thought the law was[.]" *See* Exh. C to Berke Feb. 29 Decl. at 5278, Transcript of Jury Charge, *United States v. Larson*, 105 CR 888 (S.D.N.Y. Dec. 11, 2008); *see also SEC v. M&A West Inc.*, 538 F.3d 1043, 1054 (9th Cir. 2008) (legal opinions concerning safe harbor provisions upon which defendant relied were relevant to defendant's state of mind).

[15] The government also argues that the legal memoranda should not be admitted because they are self-serving and "plainly wrong on the law." Gov't Br. 24. Such contentions – erroneous as they are – are irrelevant because the key inquiry is whether defendants saw the memoranda, and whether the memoranda informed their knowledge. *See Cheek v. United States*, 498 U.S. 192, 203, 111 S. Ct. 604, 611 (1991) (rejecting requirement that a claimed good-faith defense be objectively reasonable); *United States v. Regan*, 937 F.2d 823, 826 (2d Cir. 1991) (holding that appellants' belief need not be "correct or even objectively reasonable" but rather that it be "made in good faith"). Indeed, far from being "plainly wrong," these opinions correctly opine that poker is not covered by the Wire Act, which the Department of Justice now admits.

- 10 -

Dated: February 29, 2012
       New York, New York

KRAMER LEVIN NAFTALIS &amp;
FRANKEL LLP

By:_____/s/_____
       Barry H. Berke
       Dani R. James
       Jennifer L. Rochon

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
bberke@kramerlevin.com

BANCROFT PLLC

By:  Paul D. Clement

1919 "M" Street, N.W., Suite 470
Washington, DC 20036
(202) 234-0090
*Attorneys for Defendant Chad Elie*

HAFETZ NECHELES &amp; ROCCO

By:_____/s/_____
       Frederick P. Hafetz
       Kathleen E. Cassidy

500 Fifth Avenue
New York, New York 10110
(212) 997-7595
fhafetz@hnrlawoffices.com

CLYDE SNOW &amp; SESSIONS

By:  Neil A. Kaplan
       Anneli R. Smith

201 South Main Street, Suite: 1300
Salt Lake City, UT 84111
(801) 322-2516
*Attorneys for Defendant John Campos*

- 11 -